## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| CHARLES F. GILBERT and<br>SANDRA D. GILBERT, | CIVIL ACTION |
| Plaintiffs, | |
| v. | COMPLAINT 1:19-cv-01686 |
| BMO HARRIS, N.A.; NATIONSTAR MORTGAGE<br>LLC, D/B/A MR. COOPER; AMERICAN HONDA<br>FINANCE CORPORATION; FORD MOTOR<br>CREDIT COMPANY LLC, D/B/A LINCOLN<br>AUTOMOTIVE FINANCIAL SERVICES;<br>TAMMAC HOLDINGS CORPORATION, D/B/A<br>TAMMAC FINANCIAL; WELLS FARGO BANK,<br>N.A.; TRANSUNION, LLC; and EQUIFAX<br>INFORMATION SERVICES, LLC | JURY TRIAL DEMANDED |
| Defendants. | |

## **COMPLAINT**

**NOW COME** Charles F. Gilbert ("Charles") and Sandra D. Gilbert ("Sandra") (collectively "Plaintiffs"), by and through their attorneys, Sulaiman Law Group, Ltd., complaining of the Defendants, BMO Harris, N.A. ("BMO Harris"), Nationstar Mortgage LLC, D/B/A Mr. Cooper ("Nationstar"), American Honda Finance Corporation ("AHFC"), Ford Motor Credit Company LLC, D/B/A Lincoln Automotive Financial Services ("LAFS"), Tammac Holdings Corporation, D/B/A Tammac Financial ("Tammac"), Wells Fargo Bank, N.A. ("Wells Fargo"), TransUnion, LLC ("TransUnion"), and Equifax Information Services, LLC ("Equifax"), (collectively, "Defendants") as follows:

### NATURE OF THE ACTION

1. Plaintiffs bring this action seeking redress for violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 et seq.

## JURISDICTION AND VENUE

2. Subject matter jurisdiction is conferred upon this Court by the FCRA pursuant to 15 U.S.C. §1681 et seq., 28 U.S.C. §§1331 and 1337, as this action arises under the laws of the United States.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Plaintiffs reside in this District and all of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

4. Plaintiffs are consumers and natural persons over 18-years-of-age who, at all times relevant, resided in the Northern District of Illinois.

5. Defendant BMO Harris, N.A. maintains its principal place of business in Chicago, Illinois. BMO Harris is a creditor, lender, debt collector, and servicer of mortgage loans across the country, including the State of Illinois. BMO Harris is a furnisher of information to the major credit reporting agencies, including Equifax.

6. Defendant Nationstar Mortgage LLC, doing business as Mr. Cooper, is a Delaware limited liability company with its principal place of business located in Texas. Nationstar is in the business of servicing loans and collecting debts owed to others across the country, including in the State of Illinois. Nationstar is a furnisher of information to the major credit reporting agencies, including Equifax and TransUnion.

7. Defendant American Honda Finance Corporation is a foreign corporation with its principal place of business in Torrance, California. AHFC is in the business of providing a full range of financing services to consumers across the country, including in the State of Illinois. AHFC is a furnisher of information to the major credit reporting agencies, including Equifax.

8. Ford Motor Credit Company LLC, doing business under the registered trade name of Lincoln Automotive Financial Services, is a foreign limited liability company with its principal place of business located in Michigan. LAFS is in the business of providing a full range of

2

financing and leasing services to consumers across the country, including in the State of Illinois. LAFS is a furnisher of information to the major credit reporting agencies, including Equifax.

9. Defendant Tammac Holdings Corporation, doing business as Tammac Financial Corporation is a privately held company with its principal place of business located in Wilkes Barre, Pennsylvania. Tammac offers financial services to consumers nationwide, including in the State of Illinois. Tammac is a furnisher of information to the major credit reporting agencies, including Equifax.

10. Defendant Wells Fargo Bank, N.A. is a national banking association organized under the laws of the United States with its principal place of business located in Sioux Falls, South Dakota. Wells Fargo issues the Wells Fargo Four Seasons credit card to consumers, including in the State of Illinois. Wells Fargo is a furnisher of information to the major credit reporting agencies, including Experian.

11. Defendant TransUnion, LLC is a Delaware limited liability corporation with its principal place of business located in Chicago, Illinois. TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Illinois.

12. Defendant Equifax Information Services, LLC is a Delaware limited liability company with its principal place of business in Atlanta, Georgia. Equifax is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's

credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of Illinois.

## CREDIT REPORTING AND PLAINTIFFS' CREDIT DISPUTES

13. On July 31, 2013, Plaintiffs filed a Chapter 13 bankruptcy in the Northern District of Illinois and upon successful completion, were granted a Discharge on August 28, 2018.

14. Plaintiffs' petition included a secured claim to BMO Harris, and an unsecured claim to Wells Fargo. These claims were paid through Plaintiffs' Chapter 13 Plan.

15. During the pendency of their bankruptcy and continuing since, Plaintiffs have timely made all mortgage payments directly to Nationstar.

16. Plaintiffs' accounts with AHFC, LAFS and Tammac were paid in full and closed prior to filing bankruptcy.

### *Sandra D. Gilbert's Credit Report - TransUnion*

17. In late September 2018, Sandra pulled her Credit Karma Credit Report provided by TransUnion.

18. Sandra was shocked to discover that Nationstar and TransUnion were misreporting the Nationstar mortgage loan, as follows:

> Account Status: Closed - Derogatory
> Closed Date: April 30, 2015
> Monthly Payment: $0
> Balance: $0
> Date of Last Payment: August 26, 2016
> Remarks: Chapter 13; wage earner plan account

### *Charles F. and Sandra D. Gilbert's Credit Reports - Equifax*

19. In late November 2017, Charles pulled his Equifax credit report and discovered that the BMO Harris account, along with other accounts, was misreported, as follows:

> BMO Harris

Date of 1st Delinquency: 07/2013

20. On or about January 15, 2018, Charles sent a written credit dispute letter to Equifax requesting that his credit files be reviewed and updated to accurately reflect the BMO Harris account.

21. Specifically, Charles' letter, in relevant part, stated:

5. BMO Harris 610028* this account is being paid through my chapter 13 plan. This account is open and current. Please update this account to reflect that it is both current and open.

22. On January 27, 2018, Equifax responded to Charles' dispute without correcting the disputed accounts, as follows:

>>> **We have researched the credit account. Account # - 610028\*  The results are:** This account is currently reporting included in bankruptcy. If you have additional questions about this item please contact: **Bmo Harris Bank N.A, 200 W Monroe St FL 19, Chicago  IL  60606-5075**

| Bmo Harris Bank N.A. | | Attn Central Loan Utility PO Box 755 Chicago IL 60690-0755 : (312) 461-7117 | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|
| Account Number | Date Opened | High Credit | Credit Limit | Terms Duration | Terms Frequency | Months Revd | Activity Designator | | Creditor Classification |
| 610028* | 01/16/2008 | $0 | $0 | | Monthly | 99 | | | |
| Items As of Date Reported | Balance Amount | Amount Past Due | Date of Last Payment | Date/yr Payment Amount | Scheduled Payment Amount | Date of 1st Delinquency | Date Maj. Del. 1st Rptd | Charge Off Amount | Deferred Pay Start Date | Balloon Pay Amount | Balloon Pay Date | Date Closed |
| 12/31/2017 | $0 | $0 | 12/2017 | $0 | $0 | 07/2013 | | $0 | $0 | $0 | | |

Status - Included in Wage Earner Plan; Type of Loan - Second Mortgage; Whose Account - Joint Account; ADDITIONAL INFORMATION - Bankruptcy Chapter 13; Real Estate Mortgage; Bankruptcy Petition; Second Mortgage;

23. In November 2017, Sandra pulled her Equifax credit report and discovered that the BMO Harris account and the Nationstar mortgage loan account were misreported, as follows:

BMO Harris (Closed)
Date of First Delinquency: November 01, 2013
Delinquency First Reported: July 01, 2013

Nationstar Mortgage (Closed)
Date of First Delinquency: July 01, 2013

24. On or about January 15, 2018, Sandra sent a written credit dispute letter to Equifax requesting that her credit files be reviewed and updated to accurately reflect the BMO Harris and Nationstar accounts.

25. Specifically, Sandra's letter, in relevant part, stated:

1. BMO Harris 610028* this account is being paid through my chapter 13 plan. This account is open and current. And date 1st Delinquency gives the wrong impression about this account. Please update this account to reflect that it is both current and open.

2. Nationstar Mortgage 61702***: This account is in good standing and current/open and never delinquent and date of last payment is not correct. Date of 1st Delinquency and Maj 1st Delinquency is not correct and was never included in my chapter 13 (paid outside the chapter 13 plan).

26. On February 19, 2018, Equifax responded to Sandra's dispute without correcting the disputed BMO Harris and Nationstar accounts, as follows:



27. In late September 2018, Charles and Sandra pulled their Credit Karma Credit Reports provided by Equifax to check the accuracy of the accounts post-discharge[1].

28. Plaintiffs were shocked to discover that Defendants were misreporting their mortgage loan account, an account that was paid in full through their Chapter 13 Plan, and accounts that had been paid and closed prior to their filing bankruptcy.

29. Specifically, Charles discovered that Defendants were misreporting accounts, as follows:

1) BMO Harris
   Monthly Payment: $161,626
   Balance: $51,823
   Payment Status: 120-149 Days Late
   Amount Past Due: $51,823
   Remarks: 120 Days past due
   Latest Status: 120-149 Days late

2) American Honda Finance Corporation
   Monthly Payment: $550

---

[1] The Equifax credit reports pulled, Plaintiffs' disputes and Equifax's responses prior to this date were during the pendency of Plaintiffs' Chapter 13 bankruptcy.

3) Lincoln Automotive Financial Services
Monthly Payment: $345

4) Tammac Financial Corporation
Monthly Payment: $265

30. Specifically, Sandra discovered that Defendants were misreporting accounts, as follows:

1) BMO Harris
Date of Last Payment: July 1, 2013

2) Nationstar
Account Status: Closed
Payment Status: Included in Chapter 13
Date of Last Payment: July 1, 2013
Remarks: Bankruptcy chapter 13; Bankruptcy completed
Latest Status: Included in Chapter 13

3) American Honda Finance Corporation
Monthly Payment: $550

4) Lincoln Automotive Financial Services
Monthly Payment: $345

5) Tammac Financial Corporation
Monthly Payment: $265

### _Defendants' Erroneous Credit Reporting_

31. The reporting of the BMO Harris loan was inaccurate, incomplete, and misleading because the loan was paid in full through Plaintiffs' Chapter 13 Plan with the final payment made on July 13, 2018.

32. The reporting of the Nationstar loan was inaccurate, incomplete, and misleading because the mortgage loan was not included in Plaintiffs' Chapter 13 Plan, the account is open and active, Plaintiffs' have timely paid all monthly payments directly to Nationstar and the account is current.

33. The reporting of the AHFC account was inaccurate, incomplete, and misleading because the loan was paid and closed prior to Plaintiffs filing bankruptcy and had no monthly payment.

34. The reporting of the LAFS loan was inaccurate, incomplete, and misleading because the loan was paid and closed prior to Plaintiffs filing bankruptcy and had no monthly payment.

35. The reporting of the Tammac account was inaccurate, incomplete, and misleading because the account was paid and closed prior to Plaintiffs filing bankruptcy and had no monthly payment.

36. The reporting of the Wells Fargo account was inaccurate, incomplete, and misleading because the account was included the Plaintiffs' bankruptcy and paid through Plaintiff's Chapter 13 Plan.

### *Sandra's Dispute Letter to TransUnion*

37. On or about November 1, 2018, Sandra sent a written credit dispute letter to TransUnion requesting that her credit files be reviewed and updated to accurately reflect five accounts, including the Nationstar account.

38. Sandra's dispute letter, in relevant part, stated:

> . . . I also wanted to dispute the inaccurate reporting of the following accounts:
>
> 2.   Nationstar/Mr. Cooper, acct no. 617029XXX - This account is open and active as I am currently making payments to them. Please contact them directly to verify and reinstate this account to open, update the balance, the date of last payment, and the payment history. At current, the payment history reflect a failed to pay which is not true. I demand this account reflect the true and accurate information I am providing to you in this letter.

39. Sandra mailed the dispute letter with all relevant information to TransUnion.

40. Upon information and belief, Nationstar received notice of Sandra's dispute letter and all relevant information from TransUnion within five days of TransUnion receiving Plaintiff's dispute letter. *See* 15 U.S.C. §1681i(a)(2).

### *Plaintiffs' Dispute Letters to Equifax*

41. On or about November 1, 2018, Charles sent a written credit dispute letter to Equifax requesting that his credit files be reviewed and updated to accurately reflect the subject accounts.

42. On or about November 1, 2018, Sandra sent a written credit dispute letter to Equifax requesting that her credit files be reviewed and updated to accurately reflect the subject accounts.

43. Plaintiffs' dispute letters each stated, "I have reviewed my credit reports and have found the following errors that need to be addressed and corrected:"

44. Specifically, Charles' letter, in relevant part, stated:

1) American Honda Financial - this account was paid and closed prior to my filing, the monthly payment of $550 should be removed.
2) Lincoln Automotive - this account was paid and closed prior to my filing, the monthly payment of $345 should be removed.
3) Tammac Financial - this account was paid and closed prior to my filing, the monthly payment of $265 should be removed.

I also wanted to dispute the inaccurate reporting of the following accounts:

1) BMO Harris Bank, NA, acct no. 610028XXXX - This account was satisfied through my case which I have included the proof for your review. Please update and correct the balance, payment status, amount past due, remarks and payment history.

45. Specifically, Sandra's letter, in relevant part, stated:

1) American Honda Financial - this account was paid and closed prior to my filing, the monthly payment of $550 should be removed.
2) Lincoln Automotive - this account was paid and closed prior to my filing, the monthly payment of $345 should be removed.
3) Tammac Financial - this account was paid and closed prior to my filing, the monthly payment of $265 should be removed.

I also wanted to dispute the inaccurate reporting of the following accounts:

1) BMO Harris Bank, NA, acct no. 610028XXXX - This account was satisfied through my case which I have included the proof for your review. Please update and correct the balance, payment status, amount past due, remarks and payment history.
2) Nationstar/Mr. Cooper, acct no. 617029XXX - This account is open and active as I am currently making payments to them. Please contact them directly to verify and reinstate this account to open, update the balance, the date of last payment, and the payment history. At current, the payment history reflect a failed to pay which is not true. I demand this account reflect the true and accurate information I am providing to you in this letter.

46. Plaintiffs each mailed the dispute letters with all relevant information to Equifax.

47. Upon information and belief, AHFC received notice of Charles' dispute letter and all relevant information from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S.C. §1681i(a)(2).

48. Upon information and belief, AHFC received notice of Sandra's dispute letter and all relevant information from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S.C. §1681i(a)(2).

49. Upon information and belief, LAFS received notice of Charles' dispute letter and all relevant information from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S.C. §1681i(a)(2).

50. Upon information and belief, LAFS received notice of Sandra's dispute letter and all relevant information from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S.C. §1681i(a)(2).

51. Upon information and belief, Tammac received notice of Charles' dispute letter and all relevant information from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S.C. §1681i(a)(2).

52. Upon information and belief, Tammac received notice of Sandra's dispute letter and all relevant information from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S.C. §1681i(a)(2).

53. Upon information and belief, BMO Harris received notice of Charles' dispute letter and all relevant information from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S.C. §1681i(a)(2).

54. Upon information and belief, BMO Harris received notice of Sandra's dispute letter and all relevant information from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S.C. §1681i(a)(2).

55. Upon information and belief, Nationstar received notice of Sandra's dispute letter and all relevant information from Equifax within five days of Equifax receiving Plaintiff's dispute letter. *See* 15 U.S.C. §1681i(a)(2).

### *Sandra's Dispute Letter to Experian*

56. On or about November 1, 2018, Sandra sent a written credit dispute letter to Experian requesting that her credit files be reviewed and updated to accurately reflect accounts, including the Wells Fargo Account.

57. Specifically, Sandra's letter, in relevant part, stated:

> I have reviewed my credit reports and have found the following errors that need to be addressed and corrected:
>
>> 2) WF/Four Seasons, acct # 470500XXXXXXXXX - This account was included in my case and the payment history should be zeroed out.

58. Plaintiff mailed the dispute letter with all relevant information to Experian.

59. Upon information and belief, Wells Fargo received notice of Sandra's dispute letter and all relevant information from Experian within five days of Experian receiving Plaintiff's dispute letter. *See* 15 U.S.C. §1681i(a)(2).

### *TranUnion's Failure to Correct Inaccurate Reporting in Sandra's Credit File*

60. On November 30, 2018, TransUnion responded to Sandra's dispute without correcting the Nationstar account, as follows:



61. The reporting of the Nationstar trade line is patently inaccurate, incomplete, and creates a materially misleading impression that the terms of the loan require a payment of $6,000 per month and that the payment received on 10/03/2018 in the amount of $3,738 was a short payment. The $6,000 payment made by Plaintiffs included extra principal payment and $3,738 represents the actual monthly payment amount.

### _Equifax's Failure to Correct Inaccurate Reporting in Plaintiffs' Credit Files_

62. On November 25, 2018, Equifax responded to Charles' dispute without correcting the disputed accounts, as follows:

63. Charles discovered that Equifax continued to report the BMO Harris account, as follows:

64. The reporting of the BMO Harris trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Charles has not made a payment since June 2013 and that he was delinquent on monthly payments since July 2013.

65. Charles discovered that Equifax continued to report the AHFC account, as follows:



66. The reporting of the AHFC trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Charles is still obligated to pay a scheduled monthly payment.

67. Charles discovered that Equifax continued to report the LAFS account, as follows:

68. The reporting of the LAFS trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Charles is still obligated to pay a scheduled monthly payment.

69. Charles discovered that Equifax continued to report the Tammac account, as follows:



70. The reporting of the Tammac trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Charles is still obligated to pay a scheduled monthly payment.

71. On November 25, 2018, Equifax responded to Sandra's dispute without correcting the disputed accounts, as follows:

72. Sandra discovered that Equifax continued to report the BMO Harris account, as follows:



73. The reporting of the BMO Harris trade line is patently inaccurate, incomplete, and creates a materially misleading impression that there has been no activity on the account since July 2013, that Sandra has not made a payment since July 2013 and that she was delinquent on monthly payments since July 2013.

74. Sandra discovered that Equifax continued to report the Nationstar account, as follows:



75.  The reporting of the Nationstar trade line is patently inaccurate, incomplete, and creates a materially misleading impression that there has been no activity on the account since July 2013, that Sandra has not made a payment since July 2013, that she has been delinquent on monthly payments since July 2013, that there is no balance amount, that there is no scheduled payment amount and that the account was included in Plaintiffs' Chapter 13 Plan.

76. Sandra discovered that Equifax continued to report the AHFC account, as follows:



77. The reporting of the AHFC trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Sandra is still obligated to pay a scheduled monthly payment.

78. Sandra discovered that Equifax continued to report the LAFS account, as follows:



79. The reporting of the LAFS trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Sandra is still obligated to pay a scheduled monthly payment.

80. Sandra discovered that Equifax continued to report the Tammac account, as follows:

81. The reporting of the Tammac trade line is patently inaccurate, incomplete, and creates a materially misleading impression that Sandra is still obligated to pay a scheduled monthly payment.

### *Wells Fargo's Failure to Correct Inaccurate Reporting in Sandra's Credit Files*

82. On November 27, 2018, Experian responded to Sandra's dispute, as follows:

83. Sandra discovered that the Wells Fargo account continued to report as follows:



84. The reporting of the Wells Fargo trade line is patently inaccurate, incomplete, and creates a materially misleading impression that the last payment made was June 2013 and that there was an account balance of $2,363 in October 2018 and an actual payment paid in the amount of $103 on October 16, 2018.

85. On February 18, 2019, Sandra pulled her Credit Karma Credit Report in hopes that the disputed account was corrected.

86. Sandra discovered that the Wells Fargo account reported as follows:



87. The reporting of the Wells Fargo trade line is patently inaccurate, incomplete, and creates a materially misleading impression by reporting that Sandra failed to pay in August 2018, the month that Plaintiffs' Chapter 13 Discharge Order was entered.

**IMPACT OF CONTINUING**
**INCORRECT INFORMATION IN CHARLES'S CREDIT FILE**
(BMO HARRIS, AHFC, LAFS, TAMMAC, & EQUIFAX)

88. As of today, the erroneous reporting by Equifax of the BMO Harris Account continues to paint a false and damaging image of Plaintiff.

89. The Equifax reporting of the BMO Harris account is inaccurate, incomplete, and creates a materially misleading impression that Charles has not made a payment on the account since July 2013, which creates a materially misleading impression Charles may be responsible for some balance on the account.

90. Equifax and BMO Harris have yet to update Plaintiff's credit file to accurately reflect the subject loan account with a last payment date of July 2018, which was the final payment disbursed through Plaintiffs' Chapter 13 Plan and paid the account in full.

91. The reporting of the AHFC account is inaccurate, incomplete, and creates a materially misleading impression that Charles is still responsible for the scheduled payment amount. The AHFC account was paid as agreed and previously closed.

92. As of today, the erroneous reporting by Equifax of the AHFC account continues to paint a false and damaging image of Plaintiff. Equifax and AHFC have yet to update Plaintiff's credit file to accurately reflect the subject account with a $0 scheduled payment amount.

93. The reporting of the LAFS account is inaccurate, incomplete, and creates a materially misleading impression that Charles is still responsible for and obligated to pay the scheduled payment amount. The LAFS account was paid as agreed and previously closed.

94. As of today, the erroneous reporting by Equifax of the LAFS account continues to paint a false and damaging image of Plaintiff. Equifax and LAFS have yet to update Plaintiff's credit file to accurately reflect the subject account with a $0 scheduled payment amount.

95. The reporting of the Tammac account is inaccurate, incomplete, and creates a materially misleading impression that Charles is still responsible for the scheduled payment amount. The Tammac account was paid as agreed and previously closed.

96. As of today, the erroneous reporting by Equifax and Tammac continues to paint a false and damaging image of Plaintiff. Equifax and Tammac have yet to update Plaintiff's credit file to accurately reflect the subject account with a $0 scheduled payment amount.

97. The entire experience has imposed upon Charles significant distrust, frustration, and distress.

98.     The inaccurate and incomplete reporting of the BMO Harris, AHFC, LAFS and Tammac accounts continues to have adverse effects on Plaintiff's credit rating because it creates a false impression that the Plaintiff is still obligated to pay on the subject accounts.

99.     As a result of the conduct, actions, and inaction of each Defendant, Plaintiff Charles F. Gilbert has suffered various types of damages as set forth herein, including specifically, the loss of credit opportunity, wasted time tracking the status of his dispute, mail expenses, and mental and emotional pain and suffering.

100.    Due to the conduct of the Defendants, Plaintiff Charles F. Gilbert was forced to retain counsel to resolve the erroneous credit reporting of the BMO Harris, AHFC, LAFS and Tammac trade lines.

### IMPACT OF CONTINUING
### INCORRECT INFORMATION IN SANDRA'S CREDIT FILE
(BMO HARRIS, NATIONSTAR, AHFC, LAFS, TAMMAC,
WELLS FARGO, EQUIFAX, AND TRANSUNION)

101.    As of today, the erroneous reporting by TransUnion and Equifax of the Nationstar loan account continues to paint a false and damaging image of Plaintiff.

102.    The TransUnion reporting of the Nationstar loan account is inaccurate, incomplete, and creates a materially misleading impression that the terms of the loan require a payment of $6,000 per month and that Plaintiffs' payment received on 10/03/2018 in the amount of $3,738 was a short payment.

103.    TransUnion and Nationstar have yet to update Plaintiff's credit file to accurately reflect the subject loan account with a correct monthly payment amount.

104.    The Equifax reporting of the Nationstar loan account is inaccurate, incomplete, and creates a materially misleading impression that Plaintiff has not made a payment since July 2013, that she has been delinquent on monthly payments since July 2013, that there is no balance amount,

that there is no scheduled payment amount and that the account was included in Plaintiffs' Chapter 13 Plan.

105. Equifax and Nationstar has yet to update Plaintiff's credit file to accurately reflect the subject loan account is current and to accurately reflect the balance amount, scheduled payment amount and that the account was not included in Plaintiffs' Chapter 13 Plan.

106. As of today, the erroneous reporting by Equifax of the BMO Harris Account continues to paint a false and damaging image of Plaintiff.

107. The Equifax reporting of the BMO Harris account is inaccurate, incomplete, and creates a materially misleading impression that Sandra has not made a payment on the account since July 2013, which creates a materially misleading impression that Sandra may be responsible for some balance on the account.

108. Equifax and BMO Harris have yet to update Plaintiff's credit file to accurately reflect the subject account with a last payment date of July 2018, which was the final payment disbursed through Plaintiffs' Chapter 13 Plan and paid the account in full.

109. The reporting of the AHFC account is inaccurate, incomplete, and creates a materially misleading impression that Sandra is still responsible for and obligated to pay the scheduled payment amount. The AHFC account was paid as agreed and previously closed.

110. As of today, the erroneous reporting by Equifax and AHFC continues to paint a false and damaging image of Plaintiff. Equifax and AHFC have yet to update Plaintiff's credit files to accurately reflect the subject account with a $0 scheduled payment amount.

111. The reporting of the LAFS account is inaccurate, incomplete, and creates a materially misleading impression that Sandra is still responsible for and obligated to pay the scheduled payment amount. The LAFS account was paid as agreed and previously closed.

112.    As of today, the erroneous reporting by Equifax and LAFS continues to paint a false and damaging image of Plaintiff. Equifax and LAFS have yet to update Plaintiff's credit files to accurately reflect the subject account with a $0 scheduled payment amount.

113.    The reporting of the Wells Fargo account is inaccurate, incomplete, and creates a materially misleading impression that Sandra failed to pay in August 2018, the month that Plaintiffs' Chapter 13 Discharge Order was entered.

114.    As of today, the erroneous reporting by Wells Fargo continues to paint a false and damaging image of Plaintiff. Wells Fargo has yet to update Plaintiff's credit file to accurately reflect the subject account was paid through Plaintiffs' Chapter 13 Plan and Discharged through the bankruptcy.

115.    The entire experience has imposed upon Sandra significant distrust, frustration, and distress.

116.    The inaccurate and incomplete reporting of the BMO Harris, AHFC, LAFS, Tammac and Wells Fargo accounts continues to have adverse effects on Sandra's credit rating because it creates a false impression that the Plaintiff is still obligated to pay on the subject loan accounts.

117.    The inaccurate and incomplete reporting of the Nationstar loan account continues to have adverse effects on Sandra's credit rating because it creates a false impression that Plaintiff has not made a payment since July 2013, that there is no balance amount, that there is no scheduled payment amount and that the account was included in Plaintiffs' Chapter 13 Plan.

118.    As a result of the conduct, actions, and inaction of each Defendant, Plaintiff Sandra D. Gilbert has suffered various types of damages as set forth herein, including specifically, the loss of credit opportunity, wasted time tracking the status of her dispute, mail expenses, and mental and emotional pain and suffering.

119.   Due to the conduct of the Defendants, Plaintiff Sandra Gilbert was forced to retain counsel to resolve the erroneous credit reporting of the BMO Harris, Nationstar, AHFC, LAFS, Tammac and Wells Fargo trade lines.

### COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST BMO HARRIS, N.A. – CHARLES F. GILBERT AND SANDRA D. GILBERT)

120.   Plaintiffs restate and re-alleges paragraphs 1 through 119 as though fully set forth herein.

121.   Each Plaintiff is a "consumer" as the term is defined under 15 U.S.C. §§1681a(c) and (b).

122.   BMO Harris is a "person" as defined by 15 U.S.C. §1681a(b).

123.   BMO Harris is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

124.   At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

125.   BMO Harris violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Equifax, and Charles.

126.   BMO Harris violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Equifax and Sandra.

127.   Had BMO Harris reviewed the information provided by Equifax and Charles, it would have corrected the inaccurate designation of the BMO Harris trade line and transmitted the correct information to Equifax.  Instead, BMO Harris wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation.

128. Had BMO Harris reviewed the information provided by Equifax Sandra, it would have corrected the inaccurate designation of the BMO Harris trade line and transmitted the correct information to Equifax. Instead, BMO Harris wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation.

129. BMO Harris violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Charles' dispute to Equifax.

130. BMO Harris violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Sandra's dispute to Equifax.

131. BMO Harris violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information in Charles' credit files. Instead, BMO Harris continued to report the inaccurate, incomplete, and misleading information in Charles' credit files after receiving Charles' detailed disputes.

132. BMO Harris violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information in Sandra's credit files. Instead, BMO Harris continued to report the inaccurate, incomplete, and misleading information in Sandra's credit files after receiving Sandra's detailed disputes.

133. BMO Harris failed to conduct a reasonable reinvestigation of its reporting of the BMO Harris trade line or delete the inaccurate reporting from Charles' credit files within 30 days of receiving notice of Plaintiff's disputes from Equifax under 15 U.S.C. §1681i(a)(1).

134. BMO Harris failed to conduct a reasonable reinvestigation of its reporting of the BMO Harris trade line or delete the inaccurate reporting from Sandra's credit files within 30 days of receiving notice of Plaintiff's disputes from Equifax under 15 U.S.C. §1681i(a)(1).

135. BMO Harris violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Charles by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

136. BMO Harris violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Sandra by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

137. Despite the blatantly obvious errors in Charles's credit files, and Charles's efforts to correct the errors, BMO Harris did not correct the errors or trade line to report accurately. Instead, BMO Harris wrongfully re-reported, furnished, and re-furnished false and erroneous and misleading information, after Charles's disputes, to one or more third parties.

138. Despite the blatantly obvious errors in Sandra's credit files, and Sandra's efforts to correct the errors, BMO Harris did not correct the errors or trade line to report accurately. Instead, BMO Harris wrongfully re-reported, furnished, and re-furnished false and erroneous and misleading information, after Sandra's disputes, to one or more third parties.

139. A reasonable investigation by BMO Harris would have confirmed the veracity of Charles's disputes, yet the inaccurate information continues to be reported in Plaintiff's Equifax credit files.

140. A reasonable investigation by BMO Harris would have confirmed the veracity of Sandra's disputes, yet the inaccurate information continues to be reported in Plaintiff's Equifax credit files.

141. Had BMO Harris taken steps to investigate Charles's valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting of the BMO trade line. Plaintiff provided all relevant information regarding his disputes in his requests for investigation.

142.   Had BMO Harris taken steps to investigate Sandra's valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting of the BMO trade line.  Plaintiff provided all relevant information regarding her disputes in her requests for investigation.

143.   By deviating from the standards established by the mortgage servicing industry and the FCRA, BMO Harris acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

**WHEREFORE**, Plaintiffs, CHARLES F. GILBERT and SANDRA D. GILBERT, respectfully pray this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing BMO Harris to immediately delete the inaccurate information from each Plaintiff's credit reports and credit files;

c. Award each Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award each Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award each Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f. Award each Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT II - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST NATIONSTAR– SANDRA D. GILBERT)

144.   Plaintiff restates and re-alleges paragraphs 1 through 119 as though fully set forth herein.

145.   Plaintiff is a "consumer" as the term is defined under 15 U.S.C. §§1681a(c) and (b).

146.   Nationstar is a "person" as defined by 15 U.S.C. §1681a(b).

147. Nationstar is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

148. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

149. Nationstar violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Equifax, TransUnion, and Sandra.

150. Had Nationstar reviewed the information provided by Equifax, TransUnion, and Sandra, it would have corrected the inaccurate designation of the Nationstar trade line and transmitted the correct information to Equifax and TransUnion. Instead, Nationstar wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation.

151. Nationstar violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Sandra's dispute to Equifax and TransUnion.

152. Nationstar violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information in Sandra's credit files. Instead, Nationstar continued to report the inaccurate, incomplete, and misleading information in Sandra's credit files after receiving Sandra's detailed disputes.

153. Nationstar failed to conduct a reasonable reinvestigation of its reporting of the Nationstar trade line or delete the inaccurate reporting from Sandra's credit files within 30 days of receiving notice of Plaintiff's disputes from Equifax and TransUnion under 15 U.S.C. §1681i(a)(1).

154. Nationstar violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Sandra by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

155.   Despite the blatantly obvious errors in Sandra's credit files, and Sandra's efforts to correct the errors, Nationstar did not correct the errors or trade line to report accurately. Instead, Nationstar wrongfully re-reported, furnished, and re-furnished false and erroneous and misleading information, after Sandra's disputes, to one or more third parties.

156.   A reasonable investigation by Nationstar would have confirmed the veracity of Sandra's disputes, yet the inaccurate information continues to be reported in Plaintiff's Equifax and TransUnion credit files.

157.   Had Nationstar taken steps to investigate Sandra's valid disputes or Equifax and TransUnion's requests for investigation, it would have permanently corrected the erroneous credit reporting of the Nationstar trade line.  Plaintiff provided all relevant information regarding her disputes in her requests for investigation.

158.   By deviating from the standards established by the mortgage servicing industry and the FCRA, Nationstar acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax and TransUnion.

**WHEREFORE**, Plaintiff, SANDRA D. GILBERT, respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing Nationstar to immediately delete the inaccurate information from each Plaintiff's credit reports and credit files;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

      f.    Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

      g.    Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST AMERICAN HONDA FINANCE CORPORATION –
CHARLES F. GILBERT AND SANDRA D. GILBERT)

159.    Plaintiffs restate and re-allege paragraphs 1 through 119 as though fully set forth herein.

160.    Each Plaintiff is a "consumer" as the term is defined under 15 U.S.C. §§1681a(c) and (b).

161.    AHFC is a "person" as defined by 15 U.S.C. §1681a(b).

162.    AHFC is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

163.    At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

164.    AHFC violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Equifax and Charles.

165.    AHFC violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Equifax and Sandra.

166.    Had AHFC reviewed the information provided by Equifax and Charles, it would have corrected the inaccurate designation of the AHFC trade line and transmitted the correct information to Equifax. Instead, AHFC wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation.

167. Had AHFC reviewed the information provided by Equifax and Sandra, it would have corrected the inaccurate designation of the AHFC trade line and transmitted the correct information to Equifax. Instead, AHFC wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation.

168. AHFC violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Charles's dispute to Equifax.

169. AHFC violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Sandra's dispute to Equifax.

170. AHFC violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information in Charles's credit files. Instead, AHFC continued to report the inaccurate, incomplete, and misleading information in Charles's credit files after receiving Charles' detailed disputes.

171. AHFC violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information in Sandra's credit files. Instead, AHFC continued to report the inaccurate, incomplete, and misleading information in Sandra's credit files after receiving Sandra's detailed disputes.

172. AHFC failed to conduct a reasonable reinvestigation of its reporting of the AHFC trade line or delete the inaccurate reporting from Charles's credit files within 30 days of receiving notice of Plaintiff's disputes from Equifax under 15 U.S.C. §1681i(a)(1).

173. AHFC failed to conduct a reasonable reinvestigation of its reporting of the AHFC trade line or delete the inaccurate reporting from Sandra's credit files within 30 days of receiving notice of Plaintiff's disputes from Equifax under 15 U.S.C. §1681i(a)(1).

174.   AHFC violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Charles by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

175.   AHFC violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Sandra by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

176.   Despite the blatantly obvious errors in Charles's credit files, and Charles's efforts to correct the errors, AHFC did not correct the errors or trade line to report accurately. Instead, AHFC wrongfully re-reported, furnished, and re-furnished false and erroneous and misleading information, after Charles' disputes, to one or more third parties.

177.   Despite the blatantly obvious errors in Sandra's credit files, and Sandra's efforts to correct the errors, AHFC did not correct the errors or trade line to report accurately. Instead, AHFC wrongfully re-reported, furnished, and re-furnished false and erroneous and misleading information, after Sandra's disputes, to one or more third parties.

178.   A reasonable investigation by AHFC would have confirmed the veracity of Charles's disputes, yet the inaccurate information continues to be reported in Plaintiff's Equifax credit files.

179.   A reasonable investigation by AHFC would have confirmed the veracity of Sandra's disputes, yet the inaccurate information continues to be reported in Plaintiff's Equifax credit files.

180.   Had AHFC taken steps to investigate Charles's valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting of the AHFC trade line. Plaintiff provided all relevant information regarding his disputes in his requests for investigation.

181.   Had AHFC taken steps to investigate Sandra's valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting of the AHFC

trade line. Plaintiff provided all relevant information regarding her disputes in her requests for investigation.

182. By deviating from the standards established by the lending industry and the FCRA, AHFC acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

**WHEREFORE**, Plaintiffs, CHARLES F. GILBERT and SANDRA D. GILBERT, each respectfully pray this Honorable Court for the following relief:

   a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

   b. An order directing AHFC to immediately delete the inaccurate information from each Plaintiff's credit reports and credit files;

   c. Award each Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

   d. Award each Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

   e. Award each Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

   f. Award each Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

   g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT IV - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST FORD MOTOR CREDIT COMPANY LLC, D/B/A
LINCOLN AUTOMOTIVE FINANCIAL SERVICES -
CHARLES F. GILBERT AND SANDRA D. GILBERT)

183. Plaintiffs restate and re-allege paragraphs 1 through 119 as though fully set forth herein.

184. Each Plaintiff is a "consumer" as the term is defined under 15 U.S.C. §§1681a(c) and (b).

185. LAFS is a "person" as defined by 15 U.S.C. §1681a(b).

186. LAFS is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

187. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

188. LAFS violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Equifax and Charles.

189. LAFS violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Equifax and Sandra.

190. Had LAFS reviewed the information provided by Equifax and Charles, it would have corrected the inaccurate designation of the LAFS trade line and transmitted the correct information to Equifax. Instead, LAFS wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation.

191. Had LAFS reviewed the information provided by Equifax and Sandra, it would have corrected the inaccurate designation of the LAFS trade line and transmitted the correct information to Equifax. Instead, LAFS wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation.

192. LAFS violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Charles's dispute to Equifax.

193. LAFS violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Sandra's dispute to Equifax.

194.   LAFS violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information in Charles's credit files. Instead, LAFS continued to report the inaccurate, incomplete, and misleading information in Charles's credit files after receiving Charles' detailed disputes.

195.   LAFS violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information in Sandra's credit files. Instead, LAFS continued to report the inaccurate, incomplete, and misleading information in Sandra's credit files after receiving Sandra's detailed disputes.

196.   LAFS failed to conduct a reasonable reinvestigation of its reporting of LAFS trade line or delete the inaccurate reporting from Charles's credit files within 30 days of receiving notice of Plaintiff's disputes from Equifax under 15 U.S.C. §1681i(a)(1).

197.   LAFS failed to conduct a reasonable reinvestigation of its reporting of the LAFS trade line or delete the inaccurate reporting from Sandra's credit files within 30 days of receiving notice of Plaintiff's disputes from Equifax under 15 U.S.C. §1681i(a)(1).

198.   LAFS violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Charles by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

199.   LAFS violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Sandra by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

200.   Despite the blatantly obvious errors in Charles's credit files, and Charles's efforts to correct the errors, LAFS did not correct the errors or trade line to report accurately. Instead, LAFS wrongfully re-reported, furnished, and re-furnished false and erroneous and misleading information, after Charles's disputes, to one or more third parties.

201.   Despite the blatantly obvious errors in Sandra's credit files, and Sandra's efforts to correct the errors, LAFS did not correct the errors or trade line to report accurately. Instead, LAFS wrongfully re-reported, furnished, and re-furnished false and erroneous and misleading information, after Sandra's disputes, to one or more third parties.

202.   A reasonable investigation by LAFS would have confirmed the veracity of Charles's disputes, yet the inaccurate information continues to be reported in Plaintiff's Equifax credit files.

203.   A reasonable investigation by LAFS would have confirmed the veracity of Sandra's disputes, yet the inaccurate information continues to be reported in Plaintiff's Equifax credit files.

204.   Had LAFS taken steps to investigate Charles's valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting of the LAFS trade line. Plaintiff provided all relevant information regarding his disputes in his requests for investigation.

205.   Had LAFS taken steps to investigate Sandra's valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting of LAFS trade line.  Plaintiff provided all relevant information regarding her disputes in her requests for investigation.

206.   By deviating from the standards established by the lending industry and the FCRA, LAFS acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

**WHEREFORE**, Plaintiffs, CHARLES F. GILBERT and SANDRA D. GILBERT, each respectfully pray this Honorable Court for the following relief:

  a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

  b. An order directing LAFS to immediately delete the inaccurate information from each Plaintiff's credit reports and credit files;

c. Award each Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award each Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award each Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f. Award each Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT V - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST TAMMAC HOLDINGS CORPORATION, D/B/A TAMMAC FINANCIAL –
CHARLES F. GILBERT AND SANDRA D. GILBERT)

207. Plaintiffs restate and re-allege paragraphs 1 through 119 as though fully set forth herein.

208. Each Plaintiff is a "consumer" as the term is defined under 15 U.S.C. §§1681a(c) and (b).

209. Tammac is a "person" as defined by 15 U.S.C. §1681a(b).

210. Tammac is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

211. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

212. Tammac violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Equifax and Charles.

213. Tammac violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Equifax and Sandra.

214.  Had Tammac reviewed the information provided by Equifax and Charles, it would have corrected the inaccurate designation of the Tammac trade line and transmitted the correct information to Equifax. Instead, Tammac wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation.

215.  Had Tammac reviewed the information provided by Equifax and Sandra, it would have corrected the inaccurate designation of the Tammac trade line and transmitted the correct information to Equifax.  Instead, Tammac wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation.

216.  Tammac violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Charles's dispute to Equifax.

217.   Tammac violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Sandra's dispute to Equifax.

218.  Tammac violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information in Charles's credit files. Instead, Tammac continued to report the inaccurate, incomplete, and misleading information in Charles's credit files after receiving Charles' detailed disputes.

219.  Tammac violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information in Sandra's credit files. Instead, Tammac continued to report the inaccurate, incomplete, and misleading information in Sandra's credit files after receiving Sandra's detailed disputes.

220.  Tammac failed to conduct a reasonable reinvestigation of its reporting of the Tammac trade line or delete the inaccurate reporting from Charles's credit files within 30 days of receiving notice of Plaintiff's disputes from Equifax under 15 U.S.C. §1681i(a)(1).

221. Tammac failed to conduct a reasonable reinvestigation of its reporting of the Tammac or delete the inaccurate reporting from Sandra's credit files within 30 days of receiving notice of Plaintiff's disputes from Equifax under 15 U.S.C. §1681i(a)(1).

222. Tammac violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Charles by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

223. Tammac violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Sandra by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

224. Despite the blatantly obvious errors in Charles's credit files, and Charles's efforts to correct the errors, Tammac did not correct the errors or trade line to report accurately. Instead, Tammac wrongfully re-reported, furnished, and re-furnished false and erroneous and misleading information, after Charles's disputes, to one or more third parties.

225. Despite the blatantly obvious errors in Sandra's credit files, and Sandra's efforts to correct the errors, Tammac did not correct the errors or trade line to report accurately. Instead, Tammac wrongfully re-reported, furnished, and re-furnished false and erroneous and misleading information, after Sandra's disputes, to one or more third parties.

226. A reasonable investigation by Tammac would have confirmed the veracity of Charles's disputes, yet the inaccurate information continues to be reported in Plaintiff's Equifax credit files.

227. A reasonable investigation by Tammac would have confirmed the veracity of Sandra's disputes, yet the inaccurate information continues to be reported in Plaintiff's Equifax credit files.

228. Had Tammac taken steps to investigate Charles's valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting of Tammac trade line. Plaintiff provided all relevant information regarding his disputes in his requests for investigation.

229. Had Tammac taken steps to investigate Sandra's valid disputes or Equifax's requests for investigation, it would have permanently corrected the erroneous credit reporting of the Tammac trade line. Plaintiff provided all relevant information regarding her disputes in her requests for investigation.

230. By deviating from the standards established by the lending industry and the FCRA, Tammac acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Equifax.

**WHEREFORE**, Plaintiffs, CHARLES F. GILBERT and SANDRA D. GILBERT, each respectfully pray this Honorable Court for the following relief:

   a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

   b.  An order directing Tammac to immediately delete the inaccurate information from each Plaintiff's credit reports and credit files;

   c.  Award each Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

   d.  Award each Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

   e.  Award each Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

   f.  Award each Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

   g.  Award any other relief as this Honorable Court deems just and appropriate.

### COUNT VI - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST WELLS FARGO BANK, N.A. - SANDRA D. GILBERT)

231. Plaintiff restates and re-alleges paragraphs 1 through 119 as though fully set forth herein.

232. Plaintiff is a "consumer" as the term is defined under 15 U.S.C. §§1681a(c) and (b).

233. Wells Fargo is a "person" as defined by 15 U.S.C. §1681a(b).

234.   Wells Fargo is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

235.   At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

236.   Wells Fargo violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving a request for an investigation from Experian and Sandra.

237.   Had Wells Fargo reviewed the information provided by Experian and Sandra, it would have corrected the inaccurate designation of the Wells Fargo trade line and transmitted the correct information to Experian. Instead, Wells Fargo wrongfully and erroneously verified its inaccurate reporting without conducting a reasonable investigation.

238.   Wells Fargo violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Sandra's dispute to Experian.

239.   Wells Fargo violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information in Sandra's credit files. Instead, Wells Fargo continued to report the inaccurate, incomplete, and misleading information in Sandra's credit files after receiving Sandra's detailed disputes.

240.   Wells Fargo failed to conduct a reasonable reinvestigation of its reporting of the Wells Fargo trade line or delete the inaccurate reporting from Sandra's credit files within 30 days of receiving notice of Plaintiff's disputes from Experian under 15 U.S.C. §1681i(a)(1).

241.   Wells Fargo violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Sandra by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

242.  Despite the blatantly obvious errors in Sandra's credit files, and Sandra's efforts to correct the errors, Wells Fargo did not correct the errors or trade line to report accurately. Instead, Wells Fargo wrongfully re-reported, furnished, and re-furnished false and erroneous and misleading information, after Sandra's disputes, to one or more third parties.

243.  A reasonable investigation by Wells Fargo would have confirmed the veracity of Sandra's disputes, yet the inaccurate information continues to be reported in Plaintiff's Experian credit file.

244.  Had Wells Fargo taken steps to investigate Sandra's valid disputes or Experian's requests for investigation, it would have permanently corrected the erroneous credit reporting of the Wells Fargo trade line.  Plaintiff provided all relevant information regarding her disputes in her requests for investigation.

245.  By deviating from the standards established by the mortgage servicing industry and the FCRA, Wells Fargo acted with reckless and willful disregard for its duty as a furnisher to report accurate and complete consumer credit information to Experian.

**WHEREFORE**, Plaintiff, SANDRA D. GILBERT, respectfully prays this Honorable Court for the following relief:

a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b.  An order directing Wells Fargo to immediately delete the inaccurate information from each Plaintiff's credit reports and credit files;

c.  Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d.  Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

    f.   Award Plaintiff costs and reasonable attorney fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

Award any other relief as this Honorable Court deems just and appropriate.

### COUNT VII - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
#### (AGAINST TRANSUNION –SANDRA D. GILBERT)

246.   Plaintiff restates and re-alleges paragraphs 1 through 119 as though fully set forth herein.

247.   TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

248.   TransUnion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

249.   At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

250.   If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

251.   Sandra provided TransUnion with all relevant information in her requests for investigation and reinvestigation to reflect that the subject loan account was open and that she made all mortgage loan payments to Nationstar as agreed and outside her Chapter 13 Plan, and the account was current.

252.   TransUnion prepared Sandra's consumer reports containing inaccurate, incomplete, and materially misleading information by reporting the Nationstar trade line with erroneous information as described above, when, in fact, the subject loan was open, paid as agreed, and current.

253.   TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished as they related to Plaintiff. TransUnion prepared patently false, incomplete, and a materially misleading consumer reports concerning each Plaintiff. After Plaintiff's written detailed dispute, TransUnion had actual knowledge that Plaintiff paid the account as agreed and the account was current. Nonetheless, TransUnion wrongfully reported the account with the incorrect monthly payment which gives the impression that Plaintiff's last payment received was a short payment.

254.   TransUnion violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to then subsequently correct the information in Plaintiff's credit file.

255.   TransUnion violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Sandra's dispute to Nationstar. Upon information and belief, TransUnion failed to include all relevant information as part of the notice to Nationstar regarding Sandra's dispute that TransUnion received from Plaintiff.

256.   TransUnion violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Sandra and Nationstar.

257.   TransUnion violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of Plaintiff's disputes.

258.   TransUnion violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Nationstar that the information was complete and accurate, and without sending notice of the re-reporting to Sandra.

259.     TransUnion knew that the inaccurate designation of the Nationstar trade line on Plaintiff's consumer report as having a higher monthly payment than the actual payment and reporting the last payment received as considerably less than the inaccurate monthly payment amount reported would have a significant adverse effect on Plaintiff's credit worthiness.

260.    Despite actual knowledge that Plaintiff's credit file contained erroneous information, TransUnion readily sold Plaintiff's inaccurate, incomplete, and misleading report to one or more third parties, thereby misrepresenting facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

261.    The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

262.    By deviating from the standards established by the credit reporting industry and the FCRA, TransUnion acted with reckless disregard for its duties to report accurate and complete consumer credit information.

263.    It is TransUnion's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

264.    TransUnion's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's consumer files and reporting Plaintiff's credit information.

265.    TransUnion's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of Plaintiff.

**WHEREFORE**, Plaintiff, SANDRA D. GILBERT, respectfully prays this Honorable Court for the following relief:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing TransUnion to immediately correct the inaccurate information on Plaintiff's credit reports and credit files;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d. Award Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f. Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n(3) and 15 U.S.C. §1681o(2); and

g. Award any other relief as this Honorable Court deems just and appropriate.

### COUNT VIII - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
#### (AGAINST EQUIFAX – CHARLES F. GILBERT AND SANDRA D. GILBERT)

266. Plaintiffs restate and re-allege paragraphs 1 through 119 as though fully set forth herein.

267. Equifax is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

268. Equifax is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

269. At all times relevant, the above mentioned credit reports were "consumer reports" as that term is defined by §1681a(d).

270. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

271. Charles provided Equifax with all relevant information in his requests for investigation and reinvestigation to reflect that he paid off the BMO, AHFC, LAFS and Tammac accounts.

272.  Sandra provided Equifax with all relevant information in her requests for investigation and reinvestigation to reflect that she paid off the BMO, AHFC, LAFS and Tammac accounts.

273.  Sandra provided Equifax with all relevant information in her requests for investigation and reinvestigation to reflect that the loan account is open, has a balance amount, has an actual payment amount, at all times has been paid as agreed and is current with all payments made directly to Nationstar, and was not included in Plaintiffs' Chapter 13 Plan.

274.  Equifax prepared Charles's consumer reports containing inaccurate, incomplete, and materially misleading information by reporting the BMO, AHFC, LAFS and Tammac trade lines with erroneous information as described above, when, in fact, the subject accounts were paid as agreed and previously closed, and Charles was no longer financially obligated on the subject accounts.

275.  Equifax prepared Sandra's consumer reports containing inaccurate, incomplete, and materially misleading information by reporting the BMO, AHFC, LAFS and Tammac trade lines with erroneous information as described above, when, in fact, the subject accounts were paid as agreed and previously closed, and Sandra was no longer financially obligated on the subject accounts.

276.  Equifax prepared Sandra's consumer reports containing inaccurate, incomplete, and materially misleading information by reporting the Nationstar trade line with erroneous information as described above, when, in fact, the subject loan is open, at all times has been paid as agreed, is current, and was not included in or paid through Plaintiffs' Chapter 13 Plan.

277.  Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished as they related to each Plaintiff. Equifax prepared patently false,

incomplete, and a materially misleading consumer reports concerning each Plaintiff. After Plaintiffs' written detailed disputes, Equifax had actual knowledge that Plaintiffs no longer owed any payments on the BMO, AHFC, LAFS and Tammac accounts. Nonetheless, Equifax wrongfully reported the accounts with scheduled monthly payment amounts.

278.    Equifax violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished as they related to Sandra. Equifax prepared patently false, incomplete, and a materially misleading consumer reports concerning Sandra. After Plaintiff's written detailed dispute, Equifax had actual knowledge that the Nationstar account was open, paid as agreed, current, and not paid through or included in Plaintiffs' Chapter 13 Plan. Nonetheless, Equifax wrongfully reported the Nationstar loan with no balance, no payment since July 2013, no scheduled monthly payment amounts, and included in Plaintiffs' Chapter 13 Plan.

279.    Equifax violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to then subsequently delete or correct the information in each Plaintiff's credit file.

280.    Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Charles's dispute to BMO Harris. Upon information and belief, Equifax failed to include all relevant information as part of the notice to BMO Harris regarding Charles's dispute that Equifax received from Plaintiff.

281.    Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Charles's dispute to AHFC. Upon information and belief, Equifax failed to include all relevant information as part of the notice to AHFC regarding Charles's dispute that Equifax received from Plaintiff.

282.    Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Charles's dispute to LAFS. Upon information and belief, Equifax failed to include all relevant information as part of the notice to LAFS regarding Charles's dispute that Equifax received from Plaintiff.

283.    Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Charles's dispute to Tammac. Upon information and belief, Equifax failed to include all relevant information as part of the notice to Tammac regarding Charles's dispute that Equifax received from Plaintiff.

284.    Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Sandra's dispute to BMO Harris. Upon information and belief, Equifax failed to include all relevant information as part of the notice to BMO Harris regarding Sandra's dispute that Equifax received from Plaintiff.

285.    Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Sandra's dispute to Nationstar. Upon information and belief, Equifax failed to include all relevant information as part of the notice to Nationstar regarding Sandra's dispute that Equifax received from Plaintiff.

286.    Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Sandra's dispute to AHFC. Upon information and belief, Equifax failed to include all relevant information as part of the notice to AHFC regarding Sandra's dispute that Equifax received from Plaintiff.

287.    Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Sandra's dispute to LAFS. Upon information and belief, Equifax failed to include all relevant information as part of the notice to LAFS regarding Sandra's dispute that Equifax received from Plaintiff.

288.    Equifax violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Sandra's dispute to Tammac. Upon information and belief, Equifax failed to include all relevant information as part of the notice to Tammac regarding Sandra's dispute that Equifax received from Plaintiff.

289. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Charles and BMO Harris.

290. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Charles and AHFC.

291. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Charles and LAFS.

292. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Charles and Tammac.

293. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Sandra and BMO Harris.

294. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Sandra and Nationstar.

295. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Sandra and AHFC.

296. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Sandra and LAFS.

297. Equifax violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Sandra and Tammac.

298. Equifax violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the incorrect information that was the subject of each Plaintiff's disputes.

299. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from BMO Harris that the information was complete and accurate, and without sending notice of the re-reporting to Charles.

300. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from AHFC that the information was complete and accurate, and without sending notice of the re-reporting to Charles.

301. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from LAFS that the information was complete and accurate, and without sending notice of the re-reporting to Charles.

302. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Tammac that the information was complete and accurate, and without sending notice of the re-reporting to Charles.

303. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from BMO Harris that the information was complete and accurate, and without sending notice of the re-reporting to Sandra.

304. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from Nationstar that the information was complete and accurate, and without sending notice of the re-reporting to Sandra.

305. Equifax violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from AHFC that the information was complete and accurate, and without sending notice of the re-reporting to Sandra.

306. Equifax knew that the inaccurate designation of the AHFC, LAFS and Tammac trade lines on Plaintiffs' consumer reports as having scheduled payment amounts, after the loans were paid as agreed and previously closed, would have a significant adverse effect on each Plaintiff's credit worthiness.

307. Equifax knew that the inaccurate designation of the Nationstar trade line on Sandra's consumer report as having no balance, no payment since July 2013, no scheduled monthly payment amounts, and included in Plaintiffs' Chapter 13 Plan, would have a significant adverse effect on Sandra's credit worthiness.

308. Equifax knew that the inaccurate designation of the BMO Harris trade lines on Plaintiffs' consumer reports as incorrectly reporting a date of first delinquency and date of last payment, after the loan was paid through the Chapter 13 plan, would have a significant adverse effect on each Plaintiff's credit worthiness.

309. Despite actual knowledge that each Plaintiff's credit file contained erroneous information, Equifax readily sold each Plaintiffs inaccurate, incomplete, and misleading report to one or more third parties, thereby misrepresenting facts about each Plaintiff and, ultimately, each Plaintiff's creditworthiness.

310. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

311. By deviating from the standards established by the credit reporting industry and the FCRA, Equifax acted with reckless disregard for its duties to report accurate and complete consumer credit information.

312. It is Equifax's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

313. Equifax's non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining each Plaintiff's consumer files and reporting each Plaintiff's credit information.

314.   Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of each Plaintiff.

**WHEREFORE**, Plaintiffs, CHARLES F. GILBERT and SANDRA D. GILBERT, each respectfully pray this Honorable Court for the following relief:

    a.  Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

    b.  An order directing Equifax to immediately delete or correct the inaccurate information from each Plaintiff's credit reports and credit files;

    c.  Award each Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

    d.  Award each Plaintiff statutory damages of $1,000.00 for each of the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

    e.  Award each Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

    f.  Award each Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n(3) and 15 U.S.C. §1681o(2); and

    g.  Award any other relief as this Honorable Court deems just and appropriate.

**Plaintiffs demand a trial by jury.**

Dated:  March 11, 2019                      Respectfully Submitted,

                                            /s/ Majdi Y. Hijazin

                                            Majdi Y. Hijazin, *Of Counsel*
                                            Counsel for Plaintiffs
                                            Sulaiman Law Group, Ltd.
                                            2500 S. Highland Avenue, Suite 200
                                            Lombard, IL 60148
                                            Phone: (630) 575-8181
                                            Fax: (630) 575-8188
                                            mhijazin@hijazinlaw.com